Erin Darling  SBN 259724
LAW OFFICE OF ERIN DARLING
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
t. 323 736-2230
e. erin@erindarlinglaw.com

Carol A. Sobel, SBN 84483
Weston Rowland SBN 327599
LAW OFFICE OF CAROL A. SOBEL
2632 Wilshire Blvd., #552
Santa Monica, CA  90403
t. 310 393 -3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

Paul Hoffman, SBN 71244
John Washington, SBN 315991
SCHONBRUN, SEPLOW, HARRIS, HOFFMAN & ZELDES LLP
9415 Culver Blvd, #115
Culver City, California 90230
t. 310 396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. jwashington@sshhlaw.com

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIV.

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES, et al., <br><br> Plaintiffs, <br><br> v, <br><br> City of Santa Monica, et al., <br><br> Defendants | Case No.: 2:21-CV-05253-CAS-AFMx <br><br> Notice Of Motion And Motion For Shortened Schedule To Hear Motion For Preliminary Approval Of Class Action Settlement <br><br> Date:  August 5, 2024 <br> Time: 10:00 a.m. <br> Ctrm:  8D Hon. Christina A. Snyder |

1

PLEASE TAKE NOTICE that, on August 5, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 8D of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, the Honorable Christina Snyder, presiding, Plaintiffs will, and hereby do, move the Court to hear the unopposed motion on a shortened schedule and to grant the proposed settlement in this case, certify the stipulated class and authorize mailing and other notice to class members.

The parties seek preliminary approval of the class action settlement on a shortened motion schedule or, alternatively, without a hearing. Pursuant to the order entered on February 22, 2024 [Doc. 51], following the notice of tentative settlement [Doc. 50], the motion for class approval was to be filed within 120 days of the Court's order or the parties were to file quarterly status reports with the Court on the progress of the settlement. The initial 120 days expired on June 21, 2024. The parties were delayed in getting approval by all parties.

This motion is based on the accompanying Memorandum of Law, the proposed Preliminary Approval Order and exhibits and declarations filed concurrently, as well as the files and records in this case, and on such further evidence as may be presented at a hearing on the motion.

DATED: July 17, 2024        Respectfully submitted,

                    LAW OFFICE OF ERIN DARLING
                    LAW OFFICE OF CAROL A. SOBEL
                    SCHONBRUN, SEPLOW, HARRIS,
                        HOFFMAN & ZELDES

                      /s    Carol A. Sobel            .
                    By: CAROL A. SOBEL
                    Attorneys for Plaintiff

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

This action arises out of Defendants' arrest of participants in a protest on May 31, 2020 and the early morning hours of June 1, 2020 in Santa Monica, responding to the killing of George Floyd by police in Minneapolis a few days earlier. Plaintiffs alleged that Defendants illegally ended the assembly and unjustifiably detained and arrested Plaintiffs, holding them in unlawful conditions before releasing them.

The proposed settlement has now been signed by all parties. To maximize efficiency and minimize costs, the parties agree to the Law Office of Carol Sobel as class administrator at no more than $23,000, far less than hiring a professional administrator. Sobel Dec. ¶11. In earlier protest cases that Plaintiffs' counsel has done, even with a professional administrator, Ms. Sobel did outreach due to the nature of the class, and her role as counsel in prior protest cases. *Id.* at ¶13.

## II. TERMS OF THE SETTLEMENT

The terms of the settlement are set forth in detail in the exhibits attached to the Proposed Preliminary Approval Order, which are as follows:

Exhibit A - Settlement Agreement

Exhibit B - Proposed Class Notice

Exhibit C - Claim Form

The total monetary settlement is $2,300,000.00. Subject to court approval, the proposed distribution of the settlement funds is as follows:

**A.** a class fund of $1,600,000.00 to be paid as follows:

 a. a maximum of $7,000 to each approved class member claim;

 b. incentive awards of $15,000 to the two remaining class representatives;

1

   c. a reverter for unclaimed funds and unspent administrative costs;

**B.** statutory attorney's fees and costs of $690,000.00, subject to a separate motion for attorney's fees pursuant to 42 U.S.C. §1988 and Civil Code §52.1(h) and with the Court's approval;

All payments are to the Law Office of Carol A. Sobel Client Trust Account.

For purposes of this motion, Defendants agree that Plaintiffs are prevailing parties and further agree that $690,000 is consistent with the lodestar Plaintiffs would have sought in a contested fee motion. The fee motion filed for the fairness hearing and final approval by the Court will document the full fees and costs without the limitation of the cap set out in the settlement agreement.

The proposed Preliminary Approval Order assumes entry of the proposed order by August 5, 2024 on a shortened hearing schedule. The parties believe that this matter may be heard on a shortened schedule, or taken under submission without a hearing, because 1) it is only a preliminary approval order and 2) is unopposed. If an order is not entered by or on the August 5, 2024 date, the claim compliance dates, including the Bar, Objection and Opt-out dates, will need to be adjusted. If necessary, Plaintiffs will submit a revised Proposed Order to reflect the change in dates.

**III.  THE STANDARDS FOR ENTRY OF THE PRELIMINARY APPROVAL ORDER HAVE BEEN MET**

The two-step preliminary approval inquiry the Court engages in pursuant to Federal Rule of Civil Proceddure 23(e) is set forth below:

> [T]he Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *In re High–Tech Emp. Antitrust Litig.,* No. 11–CV–02509–LHK, 2014 WL 3917126, at *3 (N.D.Cal. Aug. 8, 2014) [internal citation omitted].

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)

> At the final approval stage, it is well-established that the Court must balance the following non-exhaustive factors to evaluate the fairness of the proposed settlement: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." [Citations.] It is less clear what factors should guide the Court's evaluation of the proposed settlement at the preliminary approval stage. "Some district courts ... have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" [Internal citation omitted]. … [P]erhaps the most important factor to consider is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Id.* [internal citations omitted.]
>
> Determining whether the settlement falls in the range of reasonableness also requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount. *See In re High–Tech Emp. Antitrust Litig., supra,* 2014 WL 3917126, at *4. Preliminary approval standards are summarized in *Newberg on Class Actions* as follows:
>
>> [T]he goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness [applying a] less demanding [inquiry] than … at the final approval phase. Some courts go so far as to state that a proposed settlement is 'presumptively reasonable at the preliminary

3

approval stage, and there is an accordingly heavy burden of demonstrating otherwise.' Nevertheless, most courts will not simply "rubber-stamp" a motion for preliminary approval, and review is more than "perfunctory."

"Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is '"probable cause" to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness.'…[C]ourts will grant preliminary approval where the proposed settlement 'is neither illegal nor collusive and is within the range of possible approval.'

The test grew out of a statement in an early version of the *Manual for Complex Litigation* calling for approval if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval.'
…
   "The general test—holding that a settlement will be preliminarily approved if it 'is neither illegal nor collusive and is within the range of possible approval'—contains both procedural and substantive elements. The procedural element focuses on the nature of the settlement negotiations and the possibility of collusion, while the substantive element focuses on the terms of the agreement itself. …". *Newberg on Class Actions* §13:13 (5th ed.) (footnote references and footnotes omitted).

Under the factors set out in the 2018 amendments to Fed. Rules of Civil Proc. 23(e) (2), this case qualifies for preliminary approval. The following facts are uncontested or stipulated to for this motion:

1. Class counsel and the class representatives have adequately represented the putative class members in this instance. The recovery for class members is adequate, if not substantial. With a class size of about 368, and a class fund of $1,600,000, the minimum recovery per class member will be about $5,600, assuming a participation rate of about 78 percent. If the class participation rate drops to 50 to 60 percent, each class member will receive $7,000. This is comparable to awards in past mass arrest cases in Los Angeles. While Plaintiffs believe their claims are strong, their counsel concluded that a recovery of between $5,600 and $7,000 per class member is fair in view of the disputed nature of the claim and that all class members were released within a few hours (in contrast to longer detentions in other cases, including detentions of more than two days). Sobel Dec. ¶¶ 9-10.

2. The most important factor for the Court is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Gamino v. KPC Healthcare Holdings, Inc.,* Case No. 5:20-cv-01126-SB-SHK, U.S. Dist. LEXIS 152741, *7 (C.D. Cal. 2023). Under that standard, the parties maintain that the proposed settlement here is fair and reasonable. The likely maximum recovery here was in the $4000 range if statutory damages were awarded under Civil Code §52.1, but the applicability of §52.1 to claims such as these is disputed and the subject of debate. Absent statutory damages, if the court allowed class wide general damages, the likely recovery was $3000-$5000 based on similar cases (although it is difficult to predict), unadjusted for inflation. Without statutory or general damages, and without a settlement, class members would have been left to pursue relatively modest

5

damages claims individually, with attorney's fees likely to have exceeded damages by a greater ratio than in *City of Riverside v. Rivera,* 477 U.S. 561 (1986).

3. An additional factor favoring settlement from Plaintiffs' perspective is that, even if they were successful at trial, it would take more time litigating individual damages and defending a potential appeal. It is Plaintiffs' counsel's judgment that the settlement is fair weighing the expected recovery against the value of the settlement and "within the range of possible approval." (*Newberg*, *supra*.)

4. The settlement terms were negotiated at arms' length through direct party to party negotiation. Sobel Dec., ¶8. The arms-length negotiations and absence of collusion is evinced by the significant discovery process. Sobel Dec. ¶¶ 6-7. This case was litigated extensively and vigorously over the course of nearly three years. Plaintiffs conducted both document discovery and numerous depositions. They also gathered substantial third-party evidence through the independent investigation by former AUSA Michael Gennaco ordered by the Santa Monica City Council.

5. The settlement provides a fair benefit to the class representatives ($15,000 in addition to their class member formula award). The Sobel Declaration describes in some detail the contributions made by the class representatives to the successful resolution of the case. See Sobel Dec., ¶ 17. The proposal for incentive awards was at Class Counsel's initiative and no discussion regarding incentive awards occurred with the Named Plaintiffs until the proposed settlement was reached. The awards to each Named Plaintiff reflects counsel's assessment of the value of their contributions to the case, the risk taken by them and the size of the settlement. *Id.*

6. Plaintiffs proposed $15,000 for each class representative is within the range of acceptable incentive payments to class representatives in recognition of work on behalf of the class and the risk in bringing the action. *See, e.g., Rodriguez*

*v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (awards to named plaintiffs in a class action are allowed and do not make a settlement unfair or unreasonable).[1]

    7.    The parties agreed that Ms. Sobel will handle the class administration for no more than $23,000. Counsel did not send this case out for bid to individual professional class administrators. In previous protest cases where professional class administrators were used, Ms. Sobel ended up engaging in substantial independent outreach to class members because of her role in representing the protest organizers preceding and during the protests, as a result of which she has built substantial relationships with many protest organizers and activists in Los Angeles. This maximizes her firm's outreach through non-traditional sources.

    8.    In *Aichele v. City of Los Angeles*, Case No.: 2:12-cv-10863-DMG-FFM, involving approximately 300 individuals arrested in the Occupy-LA protest on City Hall lawn, approximately $50,000 was budgeted for an outside administrator. The total billed by the outside administrator ultimately exceeded the budgeted amount.

---

[1] See *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *16 (N.D. Cal. Jan.26, 2007) (approved $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal.1995), (approved $50,000 to lead plaintiff). Plaintiffs will brief this issue in the motion for final approval. The Class Notice will advise of the proposed incentive award so class members may object.

In *Chua v. City of Los Angeles*, Case No. 2:16-cv-00237 JAK-GJS, with nearly 130 people arrested in Downtown Los Angeles protesting the 2014 killing of Michael Brown in Ferguson, Missouri, Ms. Sobel was approved as class administrator.

9. In those cases where Ms. Sobel's office has 1) assisted in outreach to the putative class members; or, 2) served as class administrator, the participation of class members was maximized at a lower cost than for a professional administrator. For example, because of the outreach by Ms. Sobel's office, not the outside administrator, the participation rate in *Aichele* reached more than 90 percent. The size of the putative class in this action is slightly greater than the size of the putative class in *Aichele*, but still manageable. That high a rate is not expected here for several reasons, including the accuracy of the arrest information; however, Plaintiffs believe that they can achieve a better participation rate with the Sobel law office as the class administrator. Accordingly, the parties request that the Court appoint the Law Office of Carol Sobel as class administrator. Sobel Dec. ¶ 10.

## IV. ATTORNEYS' FEES

Plaintiffs seek an award of fees that is 30 percent of the total settlement. This is within the percentage range approved by the Ninth Circuit. Plaintiffs will file a full motion for attorney fees with the motion for final approval. Plaintiffs' counsel believe that the rates actually realized in the percentage of the settlement sought for attorney fees are reasonable and do not represent a "windfall."

The chart below summarizes the current lodestar for Plaintiffs' counsel. Plaintiffs anticipate additional time preparing the motion for final approval and the fairness hearing, making the final lodestar almost equal to the fees in the settlement.

| Name | Experience | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Erin Darling | 16 | $ 975 | 158.9 | $154,927.50 |
| Paul Hoffman | 48 | $1,425 | 18.8 | $ 26,790.00 |
| Carol Sobel | 46 | $1,325 | 194.6 | $257,845.00 |
| John Washington | 7 | $ 770 | 19.5 | $ 15,015.00 |
| Katherine Robinson | 6 | $ 695 | 41.2 | $ 28,634.00 |
| Weston Rowland | 5 | $ 700 | 188.3 | $131,810.50 |
| UCI law students | 2L/3L | $ 225 | 50 | $ 11,250.00 |
| LODESTAR | | | | $626,272.00 |

For the fees motion filed with for final approval, Plaintiffs will submit declarations from each Class Counsel, including detailing billing judgment. Plaintiffs will also submit a detailed declaration on rates from Class Counsel Carol Sobel, recognized as an expert on attorneys' fees by multiple courts. Plaintiffs anticipate that the final lodestar will exceed the cap in the settlement.

The request for fees here is not for a fee award out of the Class Fund, but for a statutory fee under 42 U.S.C. §1988 and Cal. Civil Code §52.1(i). As such, the statutory fees include fees on fees in contrast to fees as a percentage of the Class Fund. *See, e.g., Prandini v. National Tea Co.*, 585 F.2d 47, 53, (3d Cir. 1978) (class action request for a statutory fee award and not fees from a common fund, so the attorneys were due compensation for litigating the attorney's fees); *Donovan v. CSEA Local Union 1000, American Federation of State, County and Municipal Employees, AFL-CIO*, 784 F.2d 98, 106 (2d Cir. 1986) (fees-on-fees in a class action fee-shifting case distinguishing common fund cases); *5 Newberg on Class Actions* §15:93 (5th ed.) (common fund lodestar includes time seeking fees ("fees-on-fees")).

9

The fee claim is for statutory attorneys' fees, not measured against the amount of the plaintiffs' recovery, and consider reasonable hours and rates and public benefit from the litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986), (quoting S.Rep. No. 94-1011, p. 6 (176), reprinted in, U.S. Code Cong. & Admin. News 1976 pp. 5908, 5913 ("[b]ecause damage awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases ... to depend on obtaining substantial monetary relief. Rather, Congress made clear that it 'intended that the amount of fees ... *not* be reduced because the rights involved may be nonpecuniary in nature.' ") (emphasis in *Rivera*)).

The total lodestar (exclusive of class administration) will increase to include Plaintiffs' counsel drafting the motion for final approval and the concurrent attorneys' fee motion; dealing with class issues or class member inquiries; responses to objections, if any; final review of billing judgment for all firms; drafting of declarations supporting fees and costs for each law office; preparation of the final approval order; and court appearances.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court preliminarily approve the settlement and sign the Proposed Order (with any revisions deemed necessary).

Dated: July 18, 2024                Respectfully submitted,

LAW OFFICE OF ERIN DARLING
LAW OFFICE OF CAROL A. SOBEL
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES

    /s/   Carol A Sobel             .
Attorneys for Plaintiffs

10