Erin Darling, SBN 259724
LAW OFFICE OF ERIN DARLING
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
t. 323 736-2230
e. erin@erindarlinglaw.com

Carol A. Sobel, SBN 84483
Weston Rowland SBN 327599
LAW OFFICE OF CAROL A. SOBEL
2632 Wilshire Blvd., #552
Santa Monica, CA 90403
t. 310 393 -3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

Paul Hoffman, SBN 71244
John Washington, SBN 315991
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
9415 Culver Blvd, #115
Culver City, California 90230
t. 310 396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. jwashington@sshhlaw.com

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIV.

BLACK LIVES MATTER
LOS ANGELES, et al.,

    Plaintiffs,

v.

City of Santa Monica, et al.,

    Defendants.

Case No.: 2-21-cv-04253 CAS-AFMx

Motion For Final Approval of
Class Action Settlement

Date: October 21, 2024
Time: 10:00 a.m.
Ctrm: ZOOM: Hon. Christina A. Snyder

1

PLEASE TAKE NOTICE that, on October 21, 2024 at 8:30 a.m., or as soon thereafter as this matter may be heard by ZOOM before the Honorable Christine A. Snyder, Courtroom 5D of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, Plaintiffs will, and hereby do, move the Court to give final approval to the proposed settlement in this case, and to authorize payment of class-wide damages to all putative class members who filed a timely claim.

This motion is based on the accompanying Memorandum of Law, the Declaration of Carol A. Sobel as the court-appointed Class Administrator, the Declarations of all class counsel regarding the attorney fees lodestar crosscheck, the proposed Final Approval order and all exhibits filed in support of the motion, as well as additional materials filed prior to the October 21 hearing and such other matters, if any, as may be presented at the hearing.

DATED: September 16, 2024               Respectfully submitted,

                                        LAW OFFICE OF ERIN DARLING

                                        LAW OFFICE OF CAROL A. SOBEL
                                        SCHONBRUN, SEPLOW, HARRIS,
                                        HOFFMAN & ZELDES

                                        By: /s/ Carol A. Sobel
                                             Carol A. Sobel
                                             Attorneys for Plaintiffs

1

## TABLE OF CONTENTS

**I.    INTRODUCTION**                                                          **1**

**II.   OUTREACH TO THE PUTATIVE ARRST CLASS**                                 **1**

**III.  CLAIMS FILED FOR PERSONS NOT LISTED AND LATE CLAIMS**                  **4**

    **A. Missing Citations for Minors**                                     **4**

    **B. Late Claims Should be Approved**                                   **5**

        **1.  The Ninth Circuit has approved late claims**             **6**

        **2.  Plaintiffs meet the standard of "excusable neglect" here** **6**

**IV.  COSTS OF CLASS ADMINISTRATION**                                         **7**

**V.   FINAL CLASS APPROVAL IS WARRANTED IN THIS ACTION**                      **7**

    **A. Standard for Final Approval**                                      **7**

    **B. Application of the Factors**                                       **8**

        **1. The amount of the settlement**                            **8**

        **2.  Sufficient discovery has occurred to evaluate the merits** **8**

        **3.  The complexity and potential costs of trial support approval** **9**

        **4.   Objections and opt-outs**                               **9**

        **5.  Experienced class counsel recommend approval**          **10**

        **6.  The ability of defendants to withstand a larger judgement** **10**

        **7.  Adequacy of negotiation**                                **11**

        **8.  Settlement terms**                                       **11**

        **9.  Settlement funds**                                       **12**

          **a. incentive award**                                **12**

          **b. attorneys' fees and costs**                       **13**

        **10. release of claims**                                      **13**

        **11. costs of administration of the settlement**             **13**

**CONCLUSION**                                                                 **14**

1

1

## TABLE OF AUTHORITIES

2

**Cases**

3    *Advance Drywall Co. v. U.S. Gypsum Co.*    5

4    565 F.2d 1123 (9th Cir. 1977)

5    *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997)    6

*Burns v. Elrod*, 757 F.2d 141 (7th Cir. 1985)    6

6    *Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848 (N.D. Cal. 2010)    9

7    *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)    7

8    *Hesse v. Spring Corp.*, 598 F.3d 581 (9th Cir. 2010)    13

9    *In re Cendant Corp. Prides Litig.,* 233 F.3d 188 (3rd Cir. 2000)    6

10   *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir. 2015)    12

*Norton v. LVNV Funding, LLC*    6

11   2022 U.S. Dist. LEXIS 33001, 2022 WL 562831 (N.D. Cal. 2022)

12   *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*    6

13   507 U.S. 380 (1993)

14   *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157 (9th Cir. 2013)    12

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)    12

15   *Zientes v. LaMorte*, 459 F.2d 628 (2d Cir. 1972)    6

16

17   **Federal Rules And Statutes**

18   Federal Rules of Civil Procedure 23(c)(2)(B)    2,3

Federal Rules of Civil Procedure 23(e)(1)(B)    3

19

20   **State Statutes**

21   Calif. Civil Code 52.1    11

22

23   **Miscellaneous**

*Reports of the Conference for District Court Judges*    5

24   63 F.R.D. 231,262 (1973)

25

26

27

28

2

**MEMORANDUM OF POINTS & AUTHORITIES**

# I. INTRODUCTION

This case arises out of the actions by Defendants surrounding protests following the death of George Floyd in Minneapolis in May 2020 at the hands of the police. The video of George Floyd's death sparked days of national protests across the country and across the Los Angeles area, including in Santa Monica.

In response to the outpouring of outrage at George Floyd's death, the City of Santa Monica enacted a city-wide curfew. The putative members of the class in this action were all arrested or detained for violations of the curfew in Santa Monica. They were handcuffed and held for prolonged periods of time without access to food, bathrooms and water. While most were transported to the Santa Monica Airport for processing, it appears that others, including minors, were processed at the Civic Center jail.

The initial After-Action Report was done at the direction of the former Chief, Defendant Renaud. The City Council then engaged an independent outside investigation team to review the City's law enforcement response to the Floyd protests. The investigation was conducted by a group headed by former Central District of California AUSA Michael Gennaco, hereinafter Gennaco Report. The Gennaco Report found substantial issues with the City's arrests in this instance for curfew violations. putative arrest class and unlawful use of force.

# II.    OUTREACH TO THE PUTATIVE ARREST CLASS

Based on the citations provided by Defendants and the documentation in the Gennaco Report, the potential class was approximately 370 people. Despite diligent efforts, current contact information was only found for about 300 people. Details of the efforts to locate class members is set out more fully below and in the concurrently

1

submitted Declaration of Katherine R. Shapiro.  Plaintiffs believe that slightly more than 205 qualified claims[1] were submitted for a participation rate of about 55 percent of the total potential class and  approximately 70 percent of those for whom current contact information was found.[2]

"[T]he court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Pursuant to the Preliminary Approval order, the Class Administrator was required to mail out the Notice and Claim Form three times and to do one skip/trace search on class members without correct contact information.  In addition, Plaintiffs were to "publish" the notice on social media and online.  To this end, Plaintiffs created a website and promoted it to more than 400 people arrested in the Los Angeles Floyd Protests, as

[1] Plaintiffs are still processing late claims and corroborating timely claims.  An updated number will be submitted at least one week prior to the final approval hearing.

[2] This number is approximately equal to the participation rate in the *Aichele* case (2011 Occupy LA) and the *Chua* case (2014 Ferguson protests). In both *Aichele* and *Chua* the arrestees were a more cohesive group.  In *Aichele*, the arrests were part of a civil disobedience action and participants' information was collected in advance of their arrests, as well as in a database prepared by the Los Angeles City Attorney.  In *Chua*, class members' contact information was collected by counsel at the courthouse when arrestees showed up on the first appearance date noted on the arrest citations. In both *Aichele* and *Chua*, names and contact information for putative class members was collected close in time to the arrests, making the contact information more accurate.  For these reasons, the contact information was more accurate in those cases than the database provided to Plaintiffs in this case.

2

well as anyone who signed up on the website from the Santa Monica arrests. The link to the website is: blmvsmgeorgefloydsettlement.com.

The settlement, with links to information and forms, was also distributed online by Black Lives Matters Los Angeles and by the activist group the People's City Council.   https://x.com/PplsCityCouncil/status/1821710389853483268.   The People's City Counsel posting produced 700 social media reactions and several qualified claims submitted.

In addition, Plaintiffs did more than the three mailings required by the Court's Order granting Preliminary Approval.  Based on conversations with individuals who did file claims early in this process, and based on information obtained in online searches, it appeared that many class members moved multiple times in the four-year period since the Floyd protests.  See, Declaration of Kate Shapiro.

Plaintiffs did the initial mailing when the Court granted preliminary approval. Nearly half of the notices were returned as wrong addresses or moved and not forwardable. Plaintiffs then researched online for updates and remailed these persons. Nearly 40-percent of the emails to the new addresses were returned, requiring more searches for correct contacts. The final mailing was on August 22, 2024. *Id.*

Ultimately, the most effective means of reaching many of those who filed claims was by email or text.  See revisions to F.R.Civ.P 23 (c)(2)(B) effective December 2019 (acknowledging that notice "may be by … electronic means, or other appropriate means" in addition to or in lieu of United States mail).  Where Plaintiffs were able to obtain potential phone number for class members, they used those numbers to make contact, including numbers that appeared to be a family member; however, no phone numbers were available for many individuals.

The database of putative class members was compiled by Plaintiffs from the copies of the citations provided by Defendants.  As Plaintiffs previously advised the Court in the Motion for Preliminary Approval, there were multiple challenges with the information garnered from the citations. At least one citation was completely illegible. About 16 people were listed as "transient," with no address. Through online database searches and dedicated skip/trace searches, several of the "transients" were located and confirmed by comparing date of birth and other information.

On quite a few of the citations, the information entered by the officers was incorrect, including non-existent addresses and grossly misspelled names. For example, the name "Raymond" was written down by the issuing officer as "Reyman." Plaintiffs were able to confirm current contact information for this person by reviewing unique identifying information on the citation, including date of birth. Another person, whose last name was "Pressman," was written down as what appeared to be an entirely different last name.  Some of these issues may have been the result of bad handwriting, but some appeared to be outright errors.  Examples of these challenges are attached to the Declaration of Carol A. Sobel and are set out in the concurrently filed Declaration of Katherine R. Schwartz.

## III.    CLAIMS FILED FOR PERSONS NOT LISTED AND LATE CLAIMS

### A. Missing Citations for Minors

Plaintiffs' counsel reviewed each claim filed for eligibility to participate in the class. After the close of the claim period, about two dozen questionable claims were reviewed. Seven were determined to be arrested in the Los Angeles protests.

In the course of reviewing these claims, it became apparent that citations issued to minors were not produced, so no class member who was a minor was contacted directly regarding notice of the settlement.  One minor was arrested with

4

his father and sister.  The father was able to produce a copy of the minor's citation, which was different in form and bore the legend "Parent's Copy" at the bottom of the document. That minor was one of eight for whom no documentation by the City.

Five of the eight were friends. One produced his citation and a photograph of himself, handcuffed on the transport bus, that was posted on social media at the time by another minor arrested in the protests.  At the bottom of the form was written "Minor's Copy," with a court appearance for Juvenile Court.

Each of the minors who filed claims but for whom Plaintiffs were not provided citations were able to identify a sibling or other arrestees who confirmed their claims. Accordingly, Plaintiffs would ask that the Court approve their claims.

## B. Late Claims Should be Approved

### 1. the Ninth Circuit has approved approving late claims

Six late claims were filed to date for otherwise qualified class members. Given the short claims period in this instance – six weeks – and the high amount of incorrect information on the citations, as well as multiple moves over four years by the majority of the class members, Plaintiffs request these claims be approved.[3]

The Ninth Court grants courts discretion to permit late claims filed in a large class action settlement fund. *Advance Drywall Co. v. U.S. Gypsum Co. (In re Gypsum Antitrust Cases)*, 565 F.2d 1123, 1127-28 (9th Cir. 1977). "[I]n the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" *Id.* at 1127 (quoting *Reports of the Conference for District Court Judges*, 63 F.R.D. 231, 262 (1973)).  Three months is

---

[3] See footnote 1.

"ordinarily a sufficiently long period within which class members may file claims." *Id.* at 1128. In this instance, the claims period was only half of this.

"Multiple circuits had held that the court maintains an inherent equitable power to 'allow late-filed proofs of claim and late-cured proofs of claim.' *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000); *accord Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972) … . The Manual for Complex Litigation also recommends that '[t]he court should allow adequate time for late claims before any refund or other disposition of settlement funds occurs.' *Manual for Complex Litigation (Fourth)* § 21.662 (2004)." *Norton v. LVNV Funding, LLC,* 2022 U.S. Dist. LEXIS 33001, *16, 2022 WL 562831, Case No. 18-cv-05051-DMR (edits supplied).

### 2.  Plaintiffs meet the standard of "excusable neglect" here

The standard applied to late claims is "excusable neglect."  This involves equitable consideration by the Court of such factors as "the danger of prejudice, the length of time delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  Here, these factors weigh in favor of granting relief to the late claims.

There is no prejudice to any party since allowing the few late claims will not change the damages any class member who filed timely will receive and the delay is only a few days past the deadline. Plaintiffs believe these persons acted in good faith give the difficulty in locating current contacts for the class.  There is no impact on judicial proceedings: the late claims will not delay the motion for final approval.

6

## IV.    COSTS OF CLASS ADMINISTRATION

The Law Office of Carol A. Sobel conducted outreach to potential class members. To date, the amount spent on class administration is approximately one-third of what was paid on the administration in *Aichele v. City of Los Angeles, supra*, a class of 300 individuals arrested in the Occupy LA protest on Los Angeles City Hall more than a decade ago. See Declaration of Carol Sobel, filed contemporaneously with this motion. Costs of mailing, printing, web searches, skip/trace services and web domain to date total Sobel Decl. at ¶¶ 10.   A small amount of additional costs are anticipated to process checks and 1099s to class members. *Id.* The total to be paid to the Law Office of Carol A. Sobel for past and future class administration will be approximately $16,000.

## V.    FINAL CLASS APPROVAL IS WARRANTED IN THIS ACTION

### A. Standard for Final Approval

The factors for entry of a final approval order are summarized in *Newberg on Class Actions* §13:48 (5th ed.).  They include:

   1) the amount of the settlement in light of the potential recovery weighed against the likelihood of plaintiffs prevailing at trial;

   2) the extent to which the parties have engaged in sufficient discovery to evaluate the merits of the case;

   3) the complexity and potential costs of trial;

   4) the number and content of objections;

   5) the recommendations of experienced counsel on the settlement; and,

   6) the capacity for the defendant to withstand a larger judgment.

See also, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (setting out factors). The proposed settlement in this instance satisfies each of these factors.

7

### B. Application of the Factors

#### 1. the amount of the settlement

The first element was addressed in the Preliminary Approval Motion and Order. Plaintiffs provided evidence to support the reasonableness of the settlement in light of prior settlements in protest cases in Los Angeles. The recovery for individual class members is greater than the base recovery in the comparator settlements and nearly twice the presumed damages of $4000 set out by the California Legislature for a Bane Act violation.

#### 2. sufficient discovery has occurred to evaluate the merits

Plaintiffs conducted significant discovery, including discovery requests and depositions. Plaintiffs also reviewed thousands of pages of documents produced by Defendants. Plaintiffs took the deposition of the former Chief of Police, named as a defendant in this action, as well as the acting City Manager at the time and a half a dozen other police and city personnel involved in the decisions to issue the curfew and make the arrests. Only after the depositions were completed did settlement discussions begin in earnest. In addition, at the outset and even before filing the complaint, Plaintiffs reviewed news accounts and substantial third-party evidence available online. This activity helped Plaintiffs frame their complaint and focus their written discovery.

#### 3. the complexity and potential costs of trial support approval

As to the complexity and potential costs of trial, the parties informed the Court that the trial in this matter was anticipated to last seven to eight days and the Court's scheduling order set the trial at six days. [Doc. 22-1]. Plaintiffs would have occurred additional costs retaining an expert on the police practices challenged here, taking the deposition of Defendants' expert, and the costs of retaining and taking depositions of

8

any rebuttal experts for Plaintiffs and Defendants, if any.

Plaintiffs assume that the trial would have been strongly opposed. While Plaintiffs believe they would prevail, they recognize that Defendants claimed that the curfew order was lawful and that, under the circumstances, the time class members were restrained and the conditions of processing arrestees before release was justifiable. The trial would have been of moderate complexity, with expert witnesses testifying on police practices, as well as individual class members testifying about their experience and defendants' representatives testifying on the practices applied in this instance.

Significantly, it is not certain that a jury would have awarded more than statutory damages under the Bane Act. It is conceivable that, if the jury did not find a Bane Act violation but nonetheless found liability, only nominal damages would have been awarded despite any argument by Plaintiffs on "presumed" damages in civil rights cases. With these possibilities, the result could have been less favorable than what the settlement provides, and then only after substantial additional litigation.

### 4.  objections and opt-outs

There were no objections to the settlement and only two "opt-outs." The request to opt-out, submitted by their attorney, is attached at Exhibit A. Both individuals who submitted notice of opting out of the settlement are plaintiffs in a separate lawsuit that is ongoing against multiple jurisdictions. The opt-out notice was submitted through their counsel. Defendants' outside counsel on this matter is also counsel for the City of Santa Monica in that case.

The fact that there were no objections and only two opt-outs is strong evidence of the support of class members for the settlement. *Chun–Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 852 (N.D.Cal.2010) ("[a] total of zero objections and

9

sixteen opt-outs (comprising 4.86% of the class) were made from the class of roughly three hundred and twenty-nine (329) members," evincing that the class "strongly supports settlement").

### 5. experienced class counsel recommend approval

Class counsel Paul Hoffman and Carol Sobel are among the most experienced litigators in the area of First Amendment protest challenges in Los Angeles, both for equitable relief and monetary damages, beginning when both were attorneys at the ACLU of Southern California. Over the course of nearly 40 years, they have litigated in the aftermath of the LAPD assault on a peaceful protest of former Governor Wilson's veto of AB 101 (prohibiting discrimination in employment against LGBTQ+ persons), the Rodney King beating by LAPD officers, the Democratic National Convention in Los Angeles, the assault on a peaceful May Day rally in MacArthur Park in 2007, the Occupy LA protests, and the 2014 Ferguson protests. Based on their collective experience in this area, they believe the settlement is fair.

### 6. the ability of defendants to withstand a larger judgment

In this instance, this factor is of little weight. The Defendants here could unquestionably withstand a larger judgment. The settlement was driven by an assessment of the reasonable value of the case and was not discounted due to questions regarding the Defendants' ability to pay. The proposed settlement has been agreed to by all parties, including the Santa Monica City Council.

### 7. adequacy of negotiations

The parties negotiated the settlement of this matter directly, without a third-party mediator. The settlement discussions began after the depositions taken by Plaintiffs. Defendants initiated the discussions with a request for a settlement demand on the monetary damages for the arrest class. Over the course of several

weeks, the parties exchanged proposals and responses to those proposals before reaching agreement on the monetary terms set out in the Settlement Agreement. The process would not have been different in any material way if the parties had reached settlement with the assistance of a third-party mediator other than the agreement might have been reached in a more compressed time period and the mediator would have been paid.

### 8. settlement terms

The Court previously reviewed the terms of the Settlement Agreement, submitted with the Motion for Preliminary Approval. The Court concluded on the initial review that the settlement does not unfairly give favored treatment to any party and is within the range of possible approval.

As in most class actions, there is risk here to both parties in continuing to litigate this matter to trial. In this case, the parties reached settlement before a motion for class certification was considered. No dispositive motions were filed by either party and trial preparations had not begun. Plaintiffs conducted extensive discovery over the course of three years, propounding discovery requests and conducting depositions.

The Settlement Agreement provides the same amount from the Settlement Fund to each putative class member. Based on the number of claim forms submitted and verified, each class member will receive the full $7,000, which is nearly twice the statutory minimum for a civil rights violation under the California Bane Act, Calif. Civ. Code §52.1.

As discussed below and in Plaintiffs' concurrently filed Motion for Attorney Fees, the Settlement Fund includes incentive awards to the two individual named plaintiffs and an amount in fees and costs to Plaintiffs' counsel that are within the

11

parameters of permissible payments/percentages and less than the lodestar amount. Plaintiffs' Motion for Attorney Fees provides documentation of their lodestar fees and costs and the qualifications of all counsel.

Accordingly, the settlement does not unfairly favor any member, represents a compromise, and avoids uncertainty for all parties involved.

### 9. settlement funds

There are no obvious deficiencies in the amount and allocations of funds.

#### a. incentive awards

The Settlement Agreement provided for an incentive award not to exceed $15,000 for each of the two class representatives. The proposed incentive award was set out in the Motion for Preliminary Approval. The Ninth Circuit instructs that "district courts [should] scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representative." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157. 1163 (9th Cir. 2013). This includes considering "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

The Settlement Agreement provides a maximum damages payment to each qualified class member of $7,000. Based on the number of such claims filed in this matter, each person who submitted a valid claim will receive the maximum amount of $7,000. The proposed incentive awards are $15,000 to each of the two named Plaintiffs, for a total of $30,000. Payment of the two incentive awards in no way diminishes the amount to be paid to each class member.

12

Plaintiffs submit that both named class representatives, David Brown and David Clennon, assisted counsel with gathering evidence necessary to prosecute the class claims, maintained contact with counsel, met with counsel and responded to discovery propounded by Defendants, engaged in deposition preparation and met with counsel in person to discuss the terms of the Settlement Agreement with Class Counsel. The incentive awards are reasonable and represent an amount that is slightly more than twice the maximum class member damages payment.

### b. attorneys' fees and costs

The Settlement Agreement authorizes Class Counsel to seek attorneys' fees of up to 30 percent of the Settlement Fund, subject to the Court's review and approval. Concurrent with this motion, Plaintiffs filed a Motion for Attorney Fees, providing detailed time records for each biller, as well as supporting evidence of the reasonableness of the hourly rates sought so that the Court may conduct a lodestar crosscheck.

With the motion for attorney fees, Plaintiffs submitted documentation of reimbursable costs of $15,950 for the merits litigation, including depositions, the filing fee, service of the subpoena and complaint, and messengers. Plaintiffs are not billing costs such as photocopies and postage, both of which were minimal. The cost of class administration is separate and subject to a cap of $23,000.00.

### 10. release of claims

In addition to reviewing the value of the settlement, the potential recovery at trial, and the inherent risks in continuing to litigate the action, courts also consider whether a class action settlement contains an overly broad release of liability. *Hesse v. Spring Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim

13

was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted).

The release here is tailored and limited to claims pled or that could have been pled based on the facts alleged in the Complaint. While it is broad in that it releases claims both known and unknown, the released claims are limited to the factual predicate of this action. In addition, because the events at issue occurred more than four years ago and were widely known at the time, it is unlikely that new actions arising from these protests would meet the statute of limitations.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs request that the Court grant final approval of the settlement in this matter.

Dated: September 16, 2024        Respectfully submitted,

Law Office of Carol A. Sobel
  /s/   Carol A Sobel                    .
Attorneys for Plaintiffs

14