1

JS-6

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 BLACK LIVES MATTER LOS ANGELES, et al., | Case No. 2:21-cv-05253-CAS-AJRx |
| 12 | CLASS ACTION |
| 13 Plaintiffs, | |
| 14 vs. | **FINAL ORDER APPROVING** |
| 15 CITY OF SANTA MONICA, et al., | **CLASS ACTION SETTLEMENT** |
| 16 Defendants. | **[DKT. 62]** |
| 17 | Judge:    Hon. Christina A. Snyder |

18

19 **I.     INTRODUCTION AND BACKGROUND.**

20        On May 31, 2020, in response to protests following the death of George Floyd

21 in Minneapolis, the City of Santa Monica ("the City") instituted a City-wide curfew.

22 Dkt. 1 ("Compl.") ¶¶ 1-2.  Between May 31, 2020 and June 1, 2020, the Santa

23 Monica Police Department ("SMPD") arrested approximately 400 people.  Id. ¶ 3.

24 Plaintiffs allege that these arrests were effectuated after protests were ended using

25 force and that the SMPD "imposed unconstitutional conditions of confinement on

26 arrestees by holding them on buses for many hours, tightly handcuffed with zip ties,

27 without access to bathroom facilities, food, or water."  Id. ¶ 5.  Arrestees were largely

28

transported to the Santa Monica Airport, where "all or almost all arrestees were released on a misdemeanor charge of violating a City Municipal Code provision that applied to the curfew." Id. ¶ 6.  Some arrestees, including a number of minors, were taken to the Civic Center jail for processing.  Dkt. 56 ("Mot. for Final Approval") at 1.

At the time of filing, plaintiffs were members of two damages classes.  Compl. ¶ 38.  The first was the "Arrest Class," made up of persons present at protests on May 31, 2020, and June 1, 2020, who were handcuffed and arrested by the SMPD or an agent of the City.  Id.  The second class was the "Direct Force Class," made up of individuals present at the relevant protests, who "were subjected to unlawful force employed by [d]efendant City and its agents."  Id.  At this stage, only the Arrest Class remains in this litigation.

On June 28, 2021, plaintiffs filed their initial complaint in this matter.  Compl. On August 2, 2023, claims asserted by the Direct Force Class and named plaintiff Kerry Hogan were dismissed with prejudice.  Dkt. 42. On February 22, 2024, defendants filed a notice of conditional settlement.  Dkt. 50.  On July 22, 2024, plaintiffs submitted an unopposed motion for preliminary approval of class certification. Dkt. 53.  On July 25, 2024, the settlement was preliminarily approved. Dkt. 55.

On September 16, 2024, plaintiffs filed a motion for final settlement approval and a motion for attorneys' fees and costs.  Dkts. 56-57.

## II.    SETTLEMENT AGREEMENT

### A. Definitions.

The capitalized terms used in this Final Approval Order shall have the meanings and/or definitions given to them in the Settlement Agreement [Dkt. 53-1 ("Settlement Agreement," "Settlement," or "Agreement")], or if not defined therein, the meanings and/or definitions given to them in this Final Approval Order.

1

**B. Incorporation of Documents.**

This Final Approval Order incorporates and makes a part hereof:

> (a) the Settlement Agreement (including the exhibits thereto); and

> (b) the Court's findings and conclusions contained in its Preliminary Approval Order.

**C. Jurisdiction and Venue.**

This Court has personal jurisdiction over the parties and the members of the Settlement Class. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 including, without limitation, jurisdiction to approve the Settlement, to settle and release all claims alleged in the action and all claims released by the Settlement, to adjudicate the objections submitted to the proposed Settlement by class members, and to dismiss the case with prejudice. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391.

**D. Definition of the Class and Settlement Class Members.**

The Settlement Class hereby certified by the Court is defined as:

> All persons who were detained and cited or arrested in or around the City of Santa Monica between May 31, 2020 and June 1, 2020 in connection with law enforcement agencies' efforts to disperse Black Lives Matter protest and enforce a City-wide curfew.

Settlement Agreement at 2.

**E. Class Action Prerequisites are Satisfied.**

The Court finds that the Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23(a) for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority, and that Settlement Class Representatives and Class Counsel are adequate representatives of the Settlement Class.

The Court concludes that there are hundreds of members of the Settlement Class, making joinder of all members impracticable; there are questions of fact and law that are common to all members of the settlement class; the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and plaintiffs David Brown and David Clennon have and will fairly and adequately protect the interests of the absent members of the relevant Settlement Class and have retained counsel experienced in civil rights litigation who have and will continue to adequately advance the interests of the Settlement Class.

The Court finds that this action may be maintained as a class action under Rule 23(b)(3) for settlement because: (1) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**F. Settlement Terms**

Plaintiffs have submitted an unopposed motion for final approval of class settlement.  Mot. for Final Approval.

The Settlement Agreement provides for a total monetary settlement of $2,300,000, which includes attorneys' fees and costs of class administration. Settlement Agreement ¶ 19.  It also provides for the dismissal of all individually named defendants with prejudice, leaving the City as the only defendant to whom the agreement is applicable.  Id.  The Settlement Agreement provides for payment of costs related to publication and distribution by defendant and for payment by the City to the Administrator part of the costs of Class Administration before Final Approval.  Id. ¶ 21.

The Settlement Agreement provides for payments of no less than $5,000 and no more than $7,000 to all class members who timely file.  Id. ¶ 27.  Additionally, the two class representatives will receive the same payment as their fellow class

members as well as a $15,000 incentive award per the terms of the Settlement Agreement. Id. ¶ 28. Any person opting out of the Settlement does not qualify for payment. Id.

The Settlement Agreement establishes that once all costs, fees, expenses, and payments to class members are paid out, any remaining money in the Class Fund is to revert to the City after 180 days. Id. ¶ 32.

Defendants, in the Settlement Agreement, continue to deny all allegations of wrongdoing and deny all liability for the allegations and claims made in this case. ¶ 17.

**G. Objections to the Proposed Settlement.**

There have been no objections to the Settlement. Mot. for Final Approval at 9. Two individuals who are plaintiffs in a lawsuit proceeding in state court against the City and other defendants opted out, via letter from their counsel. Id.; Dkt. 56-1.

**H. Legal Standard.**

The Court may only approve a settlement class after finding the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(2). In doing so, the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

1        (iv) any agreement required to be identified under Rule 23(e)(3); and

2      (D) the proposal treats class members equitably relative to each other.

3      <u>Id.</u>

4        "The purpose of the [modern] Rule 23(e)(2) is [to] establish a consistent set

5 of approval factors to be applied uniformly in every circuit, without displacing the

6 various lists of additional approval factors the circuit courts have created over the

7 past several decades."  <u>Zamora Jordan v. Nationstar Mortg., LLC</u>, No. 2:14-CV-

8 0175-TOR, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019).  Factors that the

9 Ninth Circuit has typically considered include (1) the strength of plaintiffs' case; (2)

10 the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

11 maintaining class action status throughout the trial; (4) the amount offered in

12 settlement; (5) the extent of discovery completed and the stage of the proceedings;

13 and (6) the experience and views of counsel.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d

14 1011, 1026 (9th Cir. 1998); <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575

15 (9th Cir. 2004).

16    **I.  Findings and Conclusions.**

17      **1.  Notice to the Class was Adequate.**

18        For every class to be certified under Rule 23(b), the Ninth Circuit mandates

19 that "[d]istrict courts 'must direct notice [of a proposed settlement] in a reasonable

20 manner to all class member who would be bound by the proposal." <u>CLRB Hanson</u>

21 <u>Indus., LLC v. Weiss & Assocs., PC</u>, 465 F. App'x 617, 619 (9th Cir.

22 2012) (quoting Fed. R. Civ. P 23(e)(1)(B)) (edits in original).  <u>See also</u> <u>Altes v.</u>

23 <u>Sambazon, Inc.</u>, No. 8:19-cv-01340-JLS-JDE, 2020 U.S. Dist. LEXIS 267747, at

24 *8 (C.D. Cal. May 12, 2020). "[T]o satisfy due process, notice to class members

25 must be reasonably calculated, under all the circumstances, to apprise interested

26 parties of the pendency of the action and afford them an opportunity to present their

27 objections." <u>Id.</u>, citing <u>Martinez v. Hammer Corp.</u>, No. 09-cv-06135-MMM-

28

AGRx, 2010 WL 11520538, at *2 (quoting In re Marsh ERISA Litigation, 265 F.R.D. 128, 144 (S.D.N.Y. 2010)) (internal quotations omitted).

The Court finds that fair and adequate notice of class members' right to object to the Settlement and to appear at the Fairness Hearing in support of such an objection has been provided in the form and manner required by the Settlement Agreement, the Court's Preliminary Approval Order, the requirements of due process, Rule 23, and any other applicable law. In particular, the Court finds that the Class Notice provided the best practicable notice of class members' rights and options and of the binding effect of the orders and Judgment in this case, whether favorable or unfavorable, on all class members.

Class counsel provided detailed information describing outreach to putative class members and the challenges to contacting the class, both because some citations were missing and others were not accurate, as well the number of times class members moved over the course of four years. Even so, class participation was slightly more than 50-percent of the potential class and 65-percent of those where current contacts were found. This is a good participation rate.

Plaintiffs provided information on publication of the notice on several activist websites and social media. The Declaration of Katherine Shapiro detailed outreach to those for whom the City provided citations. These persons were sent notice and claim forms by postal mail, email, and texts and online searches. Claims could be filed by mail, email or online on a dedicated website. In addition to conducting their own online searches, Plaintiffs hired a private investigator to conduct skip/trace searches for persons without current contact information. This is more than was required by the Court's Preliminary Approval Order.

The absence of objections to the Settlement by all class members strongly supports approval. See, e.g., Feist v. Petco Animal Supplies, Inc., No. 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *5 (S.D. Cal. Nov. 16, 2018) ("[T]he absence

of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004)); In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same; three objections out of approximately 57,000 class members). In response to the Class Notice, there were no objections and only two opt-outs. Mot. for Final Approval at 9.

**2. The Settlement was negotiated at arm's length.**

Where, as here, the settlement agreement is negotiated prior to the grant of a motion for formal class certification, "courts must be 'particularly vigilant' for signs of collusion because, at this stage of the litigation, there is an even 'greater potential for breach of fiduciary duty owed to the class during settlement.'" In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011). For this reason, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Id.

The Ninth Circuit directs courts to look for these "subtle signs" of collusion:

"(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no [money] but class counsel are amply rewarded;

(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay counsel excessive fees and costs in exchange for counsel accepting an unfair settlement [ ]; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."

Altes, 2020 U.S. Dist. LEXIS 267747 at *8 (citing In re Bluetooth, 654 F.3d at 947).

Based on the evidence filed in support of the motion for preliminary approval, the motion for final approval and the motion for attorney fees and costs, the Court is satisfied that there is no collusion in this instance and that approval is appropriate.

### 3. Incentive Awards

The settlement agreement provides for incentive awards to the two named class representatives. The Settlement Agreement provides for a $15,000 incentive award to each of the two class representatives.  The Ninth Circuit instructs that "district courts [should] scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representative." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157. 1163 (9th Cir. 2013). This includes considering "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003)).

Plaintiffs submit that the two class representatives, David Brown and David Clennon, assisted in gathering evidence, stayed in contact and met with counsel, responded to discovery from defendants, participated in deposition preparation, and discussed the Settlement Agreement with counsel.  Mot. for Final Approval at 13. The plaintiffs also submit that the payment of these awards has no impact on the amount to be paid to other class members.  Id. at 12.  The proposed incentive award is just over two times the high end of the damages award for class members.  Id. at 13.

The most important factor in approving incentive awards is the proportion between the amount received by class members and the incentive award.  In determining an appropriate service award, courts consider whether the proposed amount is proportional to class members' payments under the settlement.  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).

8

The proposed incentive awards are just slightly more than twice the individual damage awards to class members. Cf. Roe v. Frito-Lay, Inc., No. 14-CV-00751-HSG, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (reducing service award from $10,000 to $5,000 where "[a] $10,000 incentive award is substantially disproportionate to class members' anticipated recovery of $193.45"); Smith v. Am. Greetings Corp., No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (reducing $7,500 service award to $5,000 in a wage and hour class action where the proposed award was 4.7 times the average class member damages of $1,608.16); Willner v. Manpower Inc., No. 11-CV-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015), at *9 (reducing requested $11,000 award to $5,000 where projected average settlement payment in a wage and hour case was $605.02). In each of these cases the proportion between the reduced incentive award and average amount to class members was greater than the ratio here.

Because the proposed incentive awards to the two class representatives are well within the proportional ratio to the individual damages provided to class members, the Court approves incentive awards of $15,000 to each named plaintiff.

### 4. Relief provided is adequate.

The Settlement delivers adequate relief by providing substantial cash payments to class members. Each class member is to receive a minimum of $5,000 and a maximum of $7,000, with class representatives receiving an additional $15,000 incentive award. Settlement Agreement ¶ 27.

The Court has considered the realistic range of outcomes in this matter, including the amount plaintiffs might receive if they prevailed at trial, the strength and weaknesses of the case, the novelty and number of the complex legal issues involved, the risk that plaintiffs would receive less than the relief afforded by the

Settlement Agreement or recover nothing at trial, and the risk of a reversal of any judgment.  The Settlement is well within a range of reasonableness.

In this case, the parties have reached settlement before litigating dispositive motions or preparing for trial.  Parties did, however, conduct extensive discovery over the course of the three years between the filing of this case and settlement.

**5.  Proposed distribution method is effective.**

The Administrator will be responsible for processing and paying class claims based on submission of Proof of Claim Forms pursuant to the Settlement Agreement. Settlement Agreement ¶ 43.

**6.  Attorneys' fees are reasonable.**

Pursuant to the Settlement Agreement, attorneys' fees are capped at $690,000, 30% of the total settlement.  Id. ¶ 39.  These fees are included in the total $2,300,000 settlement amount.  Id.  Further discussion of the reasonableness of attorneys' fees in this case can be found in Section V, infra.

**7.  The Settlement Agreement treats class members equitably.**

In addition to the incentive awards described above, the Settlement Agreement provides for equal payments to each class member (exclusive of the class representatives).  Settlement Agreement ¶ 27.

**III.    LATE FILED CLAIMS**

Plaintiffs also request the Court approve several claims filed after the September 9 Bar date.  Most of the late claims were filed on behalf of individuals who were minors at the time of their arrest in 2020 and for whom the City did not produce arrest citations, as set out in Plaintiffs' Motion for Final Approval.

Pursuant to Ninth Circuit authority, the Court has the discretion to permit late claims filed in a large class action settlement fund. Advance Drywall Co. v. U.S. Gypsum Co. (In re Gypsum Antitrust Cases), 565 F.2d 1123, 1127-28 (9th Cir. 1977). "[I]n the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" Id. at 1127

(quoting <u>Reports of the Conference for District Court Judges</u>, 63 F.R.D. 231, 262 (1973)).  The Ninth Circuit found that three months is "ordinarily a sufficiently long period within which class members may file claims." <u>Id.</u> at 1128. In this instance, the claims period was only half of this with slightly less than three months from preliminary to final approval of the settlement in this matter.

The Ninth Circuit approach is consistent with decisions in other circuits and the recommendation of the Manual of Complex Litigation. "Multiple circuits had held that the court maintains an inherent equitable power to 'allow late-filed proofs of claim and late-cured proofs of claim.' <u>In re Cendant Corp. Prides Litig.</u>, 233 F.3d 188, 195 (3d Cir. 2000); <u>accord</u> <u>Burns v. Elrod</u>, 757 F.2d 151, 155 (7th Cir. 1985); <u>Zients v. LaMorte</u>, 459 F.2d 628, 630 (2d Cir. 1972) … . The Manual for Complex Litigation also recommends that '[t]he court should allow adequate time for late claims before any refund or other disposition of settlement funds occurs.' <u>Manual for Complex Litigation (Fourth)</u> § 21.662 (2004)."  <u>Norton v. LVNV Funding, LLC</u>, No. 18-cv-05051-DMR, 2022 WL 562831, at *6 (N.D. Cal. Feb. 24, 2022) (edits supplied).

Based on strong authority allowing late claims the Court grants the request and directs that all such claim forms be approved.

## IV.    ATTORNEYS' FEES

### A. Legal Standard.

District courts must ensure that attorneys' fees awards in class action cases are reasonable.  <u>Lowery v. Rhapsody Int'l, Inc.</u>, 75 F.4th 985, 991 (9th Cir. 2023). In the Ninth Circuit, there are "two ways to determine attorneys' fees awards in class actions: (1) the 'lodestar' method and (2) the 'percentage-of-recovery' method." <u>Id.</u> at 990.  "[T]he choice between lodestar and percentage calculation depends on the circumstances, but . . . 'either method may . . . have its place in determining what would be reasonable compensation.'" <u>Six (6) Mexican Workers v. Arizona Citrus</u>

Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (third alteration in original) (quoting Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)).

Twenty-five percent recovery is the benchmark for attorneys' fees, though courts in the Ninth Circuit have approved upward departures to be within the acceptable range.  See In re Bluetooth, 654 F.3d at 942 (noting 25% benchmark); Powers v. Eichen, 229 F.3d 1249. 1256-57 (9th Cir. 2000) (upward departure acceptable when expressly explained).

Having reviewed the history and facts of this case, the Court finds that the percentage approach, followed by a lodestar cross check to ensure the reasonableness of fees is appropriate.

**B. Calculating Attorneys' Fees.**

Plaintiffs argue that the attorneys' fees and costs of $690,000 are reasonable compared to a total settlement fund of $2,300,000 applying either the percentage calculation approach or the lodestar method.  Dkt. 57 ("Mot. for Attorneys' Fees and Costs").

**1. Percentage calculation**

Attorneys' fees and costs of $690,000, what plaintiffs' counsel requests here, amount to 30% of the settlement fund.  Id. at 1.  This includes reimbursed costs of litigation, plaintiffs contend, thus the fees are actually equal to about 27% of the Class Fund.  Id. at 2. Though this is above the 25% benchmark set by the Ninth Circuit, the Court finds that the slight upward deviation is warranted here.

In determining whether a deviation from the 25% benchmark is warranted, courts frequently consider the Vizcaino factors: (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was

handled on a contingency basis.  <u>In re Optical Disk Drive Prod. Antitrust Litig.</u>, 959 F.3d 922, 930 (9th Cir. 2020) (citing <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043,1048-50 (9th Cir. 2002)).

Factor one, exceptional results, favors a slight upward deviation.  A payout ranging from $5,000 to $7,000 per plaintiff is substantial.  Plaintiffs point out that the amount is "greater than the base recovery in the comparator settlements and nearly twice the presumed damages of $4000 set out by the California Legislature for a Bane Act Violation."  Mot. for Final Approval at 8.  The Court agrees with plaintiffs that the settlement is favorable for the class.

Factor two, risk of the case for class counsel, is neutral. The Court does not find that the case was particularly risky for Class Counsel, as counsel in this case litigates primarily in this field; however, a favorable result was by no means certain. Looking to the third factor, the Court notes that there are no non-monetary benefits of the settlement to consider, thus this factor is also neutral.

The fourth factor, market rate, also supports an award slightly above the benchmark.  The Ninth Circuit has found that 25% of the total settlement fund is the benchmark for attorney's fees in common fund cases, but that 20-30% of the fund is "the usual range."  <u>Vizcaino</u>, 290 F.3d at 1047 (citing <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989)).  The Court notes that the 27% agreed upon here falls within this range.  The Court finds that the fifth factor, burden on class counsel, favors a slight upward adjustment.  Class counsel and defendants negotiated this case without the assistance of a paid mediator, increasing the burden on counsel.  Mot. for Final Approval at 10-11.  Counsel also undertook additional notice procedures beyond those required by the Court to attempt to notify class members whose information was unclear or improperly recorded on their citations. <u>Id.</u> at 4.  Finally, the sixth factor, contingency, also favors upward adjustment from the benchmark, as this case was litigated on a contingency basis.

Given these factors, the Court finds that the slight upward adjustment, from the Ninth Circuit's benchmark of 25%, to approximately 27%, is reasonable in this case.

### 2. Lodestar cross-check

A lodestar cross-check confirms that $690,000 is a reasonable award of attorneys' fees and costs. To guard against an unreasonable result, the Ninth Circuit encourages district courts to "cross-check[] their calculations against a second method." In re Bluetooth, 654 F.3d at 944; see also Vizcaino, 290 F.3d at 1050-51 (applying a lodestar cross-check to ensure the percentage-of-recovery method yielded a reasonable result).

Here, plaintiffs' counsel calculated their collective lodestar to be $702,662. Mot. for Attorneys' Fees at 4. In support, counsel submitted summary charts listing the attorneys and the student group that worked on the case, their hours, and their hourly rates. Id. These calculations are reproduced here.

| Name | Role | Admitted | Hours | Rate | Lodestar |
|---|---|---|---|---|---|
| Paul L. Hoffman | Attorney | 1976 | 18.8 | $1,425.00 | $ 26,790.00 |
| Carol A. Sobel | Attorney | 1978 | 239.8 | $1,325.00 | $ 317,735.00 |
| Erin Darling | Attorney | 2008 | 161.2 | $ 975.00 | $ 157,170.00 |
| John Washington | Attorney | 2017 | 19.5 | $ 770.00 | $ 15,105.00 |
| Katherine Robinson | Attorney | 2018 | 41.1 | $ 695.00 | $ 28,564.50 |
| Weston Rowland | Attorney | 2019 | 187.3 | $ 675.00 | $ 126,427.50 |
| UCI Civil Rights | Students | 2L/3L | 137.2 | $ 225.00 | $ 30,870.00 |
| TOTAL LODESTAR | | | 805.1 | | $ 702,662.00 |

Id. at 4.

These calculations are unopposed. The Court finds that the reported lodestar of $702,662 supports the reasonableness of a 27% award.

**V.    RETENTION OF JURISDICTION.**

The Court has jurisdiction to enter this Final Approval Order.  Without in any way affecting the finality of this Final Approval Order, for the benefit of the Settlement Class and defendants, and to protect this Court's jurisdiction, the Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and Settlement relief, including notices, payments, and benefits thereunder, the Class Notice and sufficiency thereof, any objection to the Settlement, the adequacy of representation by Class Counsel and/or the class representatives, the amount of attorneys' fees and litigation expenses paid to plaintiffs' counsel, the amount of incentive awards to be paid to the class representatives, any claim by any person or entity relating to the representation of the Settlement Class by Class Counsel, any remand after appeal or denial of any appellate challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to this case and Settlement.

**VI.    CONCLUSION.**

The Motion for Final Approval is **GRANTED** on the terms set forth in this Final Approval Order, and the parties and their counsel are directed to implement and consummate the Settlement according to its terms and provisions as set forth in the Settlement Agreement.

The Motion for Attorneys' Fees and Costs is also **GRANTED**.

Plaintiffs are to file a Notice of Dismissal within one week of this Order.

**IT IS SO ORDERED.**

DATED: October 22, 2024          By: _____*Christine A. Snyder*_____

Honorable Judge Christina A. Snyder,
United States District Court Judge